MELINDA HAAG (CABN 132612)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

TRACIE L. BROWN (CABN 184339)
THOMAS E. STEVENS (CABN 168362)
Assistant United States Attorney
    450 Golden Gate Ave., Box 36055
    San Francisco, California 94102
    Telephone: (415) 436-7200
    Fax:        (415) 436-7234
    E-Mail:     Tracie.Brown@usdoj.gov
                Thomas.Stevens@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | No. CR 09-0850 VRW |
|     Plaintiff,        ) | **GOVERNMENT'S TRIAL** |
|                ) | **MEMORANDUM** |
|    v.             ) | |
|                ) | |
| PASQUALE IANNETTI,     ) | |
|                ) | Pretrial Hearing: September 2, 2010 |
|     Defendant.     ) | Time: 2:00 p.m. |
|                ) | Courtroom 6, 17th Floor |
| _____ ) | |

      Pursuant to the Court's pretrial scheduling order filed May 14, 2010, the United States

respectfully submits this Trial Memorandum, briefly setting forth the legal basis for the charges

and anticipated evidence, and addressing anticipated evidentiary and legal issues.

I.    <u>Legal Basis for the Charges.</u>

      The Defendant is charged with eight counts of mail fraud, in violation of 18 U.S.C.

§ 1341, and seven counts of wire fraud, in violation of 18 U.S.C. § 1343. All charges are based

on the Defendant's sale of counterfeit art from his gallery in Union Square.

///

II.     Anticipated Evidence.

The United States expects to present the following evidence proving that the Defendant engaged in a scheme to defraud his customers by knowingly selling counterfeit prints of Spanish artist Joan Miró, using both the mails and interstate wire transmissions in the course of the scheme to defraud:

A.      Relationship Between Bonfiglioli and the Defendant.

Documentary evidence and testimony will establish that there was both a financial relationship and a friendship between the Defendant and unindicted co-schemer Elio Bonfiglioli. For example, multiple consignment contracts show the consignment of Miró pieces from Bonfiglioli to the Defendant.  Further, inventory cards used by the Defendant in his gallery show consignment of the same Miró pieces from the Defendant to his gallery, reflecting a substantially higher acquisition cost than in the consignment contracts.  The government will also present bank records (and possibly a summary exhibit) showing payments from the Defendant to Bonfiglioli pursuant to the consignment contracts.

In addition to these records, the government will present the English language transcript of a wiretapped Italian language conversation between Bonfiglioli and the Defendant.  This conversation, in which Bonfiglioli and the Defendant talk to each other as old friends, not merely as individuals involved in arm's length business transactions, demonstrates the Defendant's knowledge that he, Bonfiglioli, and Oswald Aulestia-Bach were involved in the distribution of counterfeit artwork.  The government will also present testimony from the Defendant's former employees regarding the Defendant's relationship with Bonfiglioli.  Finally, the government will present testimony regarding surveillance of the Defendant with Bonfiglioli in San Francisco on November 9 and 10, 2007.

B.      Statements as to Authenticity of the Miró Prints.

The government will present "Appraisal and Authenticity Reports" issued by the Defendant's gallery (some of which are signed by the Defendant himself), and the Defendant's gallery's website representation that all artwork is "guaranteed to be genuine."  The Defendant's employees are expected to testify that the Defendant was the only person who determined

1  authenticity of the artwork sold in the gallery.

2        C.    The Acquisition and Purchase of The Print Labeled Inventory No. 51954.

3        The government will present testimony and photographs from surveillance performed in

4  Italy on November 3, 2007, where the *Carabinieri* (Italian law enforcement officers) observed

5  and photographed Bonfiglioli holding a Miró print while an individual known as Oswald

6  Aulestia-Bach appeared to forge Miró's signature.

7        The government will then present testimony and photographs from surveillance

8  performed at Kennedy Airport on November 4, 2007, where U.S. law enforcement officers

9  stopped Bonfiglioli and his traveling companion as they entered the United States.  During that

10  stop, law enforcement officers found in Bonfiglioli's luggage consignment contracts between

11  Bonfiglioli and the Defendant, as well as the same Miró print that Aulestia-Bach had signed with

12  Bonfiglioli in Italy the day before (among other items).  U.S. Postal Inspector Matthew Carlson

13  placed the date and his initials in invisible ink on the prints in Bonfiglioli's possession.

14        The government will then present business records and testimony relating to U.S. Postal

15  Inspector Marius Greenspan's December 24, 2007 undercover purchase of the same Miró print

16  that Aulestia-Bach had signed with Bonfiglioli in Italy on November 3, 2007, and that Postal

17  Inspector Carlson initialed on November 4, 2007.  The initials that Postal Inspector Carlson had

18  placed on the back of the print will be visible by use of a "black light."

19        D.    Victims.

20        The government will present business records relating to, and testimony from, the

21  individuals who purchased the counterfeit prints charged in the Indictment (other than the above-

22  described undercover purchase reflected in Counts 1 and 9).  The victims are expected to testify

23  that they would not have purchased the prints had they known they were forgeries.

24        E.    The Defendant's February 20, 2008 Confession.

25        The government will present testimony from U.S. Postal Inspector Patrick Esteban

26  regarding the Defendant's confession during execution of the search warrant on February 20,

27  2008.  Postal Inspector Esteban will also testify that the Defendant walked around the gallery and

28  showed the Inspector the Miró prints that were forgeries.

F.    Expert Testimony.

The government will also present the testimony of NYU Professor Robert Lubar, who is expected to offer his opinion on the subject of whether the prints referenced in the Indictment (as well as approximately eight others) are forgeries.

G.    Evidence Of Mailings and Interstate Wires.

Should the Defendant decline to agree to the government's proposed stipulation as to the mailing and interstate wire elements of the mail and wire fraud charges, the government will present documents and testimony satisfying those elements for all of the charges.

III.   Anticipated Legal and Evidentiary Issues.

From the government's perspective, there are no legal issues regarding the soundness of the charges, and most of the major evidentiary issues have been raised in the motions *in limine*.

Based upon the Defendant's response to the government's motions *in limine*, Defendant's principal evidentiary dispute is to the admission of the December 11, 2007 wiretapped conversation between the Defendant and Bonfiglioli.  Defendant asserts that, (1) if Bonfiglioli's statements are not offered for their truth, the conversation is irrelevant, unfairly prejudicial, and (2) if offered for their truth, the statements are inadmissible under the coconspirator exception to the hearsay rule (Federal Rule of Evidence 801(d)(2)(E)).  For the reasons explained in the government's motion *in limine* on this issue, and as will be further supported in its reply brief, the government believes that these objections lack legal and factual support, and that the Court should admit the wiretap evidence.

The government has also learned subsequent to filing its Italian wiretap motion that the defense will not stipulate to the government's translation.  The defense has not proposed an alternative translation, but has agreed to do so, and (if the Court deems the wiretapped conversation admissible), the government hopes that the parties will be able to work out a single English translation that both sides agree is accurate.  If we are not able to reach agreement, the government will request the Court to make a pretrial ruling regarding the accuracy of the transcripts, and/or the procedures that the Court will employ if it decides to present competing translations to the jury.  *See United States v. Abonce-Barrera*, 257 F.3d 959, 963-64 (9th Cir.

1   2001) (setting forth factors to be considered regarding admission of foreign language

2   transcriptions: "(1) whether the district court reviewed the transcriptions and translations for

3   accuracy, (2) whether the defense counsel had the opportunity to highlight alleged inaccuracies

4   and to introduce alternative versions, and (3) whether the jury was allowed to compare the

5   transcript to the tape and hear counsel's arguments as to the meaning of the conversations.")

6   (internal quotations and citations omitted); *United States v. Armijo*, 5 F.3d 1229, 1234-35 (9th

7   Cir. 1993) (no abuse of discretion where district judge did not review tape for accuracy where he

8   was not fluent in Spanish and there was no agent involved in the conversation who could testify

9   to its accuracy).

10  IV.    Miscellaneous.

11         A.    Trial Date.

12         The Court has not yet decided whether the trial will begin on September 20, 2010,

13  December 6, 2010, or December 13, 2010.  The government reiterates its position that the

14  September 20, 2010 date is preferable, and that giving the defense an additional week of time to

15  review Professor Lubar's expert report is sufficient, particularly in light of the facts that (a) the

16  Defendant was indicted in August 2009; (b) the Defendant confessed in February 2008 that he

17  knew the Bonfiglioli-acquired Miró prints were counterfeit, even pointing out which specific

18  prints in his gallery were forgeries; and (c) the case involves neither novel legal theories nor

19  particularly complicated facts.

20         If the Court is inclined to continue the trial until December, the government requests a

21  December 6 trial date, with the expert disclosure schedule set forth in the government's Status

22  Memorandum filed on August 16, 2010.  If the trial will not begin until December, there is no

23  reason to require Professor Lubar and the government to work virtually around-the-clock from

24  September 2 to September 9 (the earliest possible date on which the government could disclose

25  its expert report).

26  ///

27  ///

28  ///

1    B.    <u>Potential for Amended Indictment and Verdict Form</u>

2         Depending upon the trial date ultimately chosen by the Court, the government may be

3    forced to dismiss one or more counts due to unavailability of victim witnesses.  Should this event

4    occur, the government will prepare a revised Indictment and verdict form, which will reflect only

5    those counts remaining to be submitted to the jury.  The government will further request that the

6    defense stipulate to the revised indictment and verdict form, so that the Court may allow the

7    revised Indictment to go to the jury room during deliberations without raising any potential

8    appellate issues.

9    C.    <u>Stipulations</u>.

10        On August 6, 2010, the government proposed several stipulations to the defense in order

11   to streamline the trial, as follows:

12   •     that the prints were mailed, as alleged in Counts 1-8;

13   •     that the credit card transactions and wire transfers were interstate wire

14         transmissions, as alleged in Counts 9-15;

15   •     that the chain of custody has been maintained for all items seized during the

16         execution of the search warrant, and for all prints the USPIS received from

17         customers who had purchased them from the Iannetti Gallery;

18   •     all documents from, or created by, the Iannetti Gallery (including inventory cards,

19         green ledger, sales contracts, consignment contracts, authenticity reports, website

20         printouts, shipment records, and check stubs) are authentic under Fed. R. Evid.

21         901 and constitute business records under Fed. R. Evid. 803(6); and

22   •     all bank records (including checks, deposit slips, and bank statements) are

23         authentic under Fed. R. Evid. 901 and constitute business records under Fed. R.

24         Evid. 803(6).

25        The defense has not yet responded to these proposals.  The government will likely

26   propose additional stipulations as pretrial preparations continue; to the extent the defense agrees,

27   ///

28   ///

1    the government will prepare formal stipulations to be read to the jury and admitted as part of the

2    trial record.

3    DATED:  August 27, 2010                     Respectfully submitted,

4                                                MELINDA HAAG
                                                 United States Attorney
5

6                                                _____/s/_____
                                                 TRACIE L. BROWN
7                                                THOMAS E. STEVENS
                                                 Assistant United States Attorneys
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28